HEARD NOV. TERM, 1871.

## THOMAS *vs.* KELLY.

Devise of a plantation to testator's wife for life, "and at her death to be appraised by three disinterested freeholders; and that my son W. have the right to said plantation at the appraised value, if he choose to do so, at a credit of one, two and three years, in equal annual payments, without interest; but if he should decline to take said plantation, then my executors are * + * to sell + * * the same, and the money arising from the sale * + + to be divided amongst my children." At the death of testator's widow, the plantation was appraised, and W. having elected to take it, gave to the executors his three sealed notes, payable in one, two and three years, each for one-third of the appraised value, but failed to pay the notes at maturity: *Held*, That payment of the appraised value was a condition annexed to the devise, and that W. having failed to perform the condition, his estate ceased.

William Kelly, the testator in the cause, died in 1860, and this was a bill by his executors to settle up the estate.

The only questions made by the appeal arose under the second and fifth clauses of his will. The second clause is as follows:

"It is my wish and desire that my wife continue to live on the plantation whereon I now reside, and to hold the same in her own right, to work and to use in any manner she may deem proper during her natural life, and at her death to be appraised by three disinterested freeholders; and that my son Wm. H. Kelly have the right to said plantation at the appraised value, if he choose to do so, at a credit of one, two and three years, in equal annual payments, without interest; but if he should decline to take said plantation, then my executors are hereby authorized and empowered to sell and make a sufficient title to the same, and the money arising from the sale of said plantation to be divided amongst my children as hereinafter provided."

The widow of the testator died in March, 1861. In January, 1862, the plantation mentioned in the second clause of the will was appraised, as in that clause directed, and the appraisers estimated its value at $12,210. W. H. Kelly elected to take it at that value, and on the 21st March, 1862, he gave to the executors of the will his three sealed notes, each for $4,070, payable in one, two and three years. He took possession of the plantation as his own property, and held it until 1864, when he died, leaving a widow and children. The notes have never been paid.

The question in relation to that plantation was whether W. H. Kelly took an indefeasible estate when he elected to take it at the appraised value, or whether payment of the appraised value was

not a condition annexed to the devise on failure to perform which his estate ceased and determined.

The Chancellor who heard the case on Circuit held that W. H. Kelly took an indefeasible estate in the plantation, unincumbered with any charge, or lien, to secure the payment of the appraised value, and the appeal brought the question before this Court.

The brief furnished the Reporter contains no copy of the fifth clause of the will, nor are the facts upon which the question in relation to that clause arose, stated in it.

—— ——, for appellant.
*Brawley*, contra.

Feb. 9, 1872. The opinion of the Court was delivered by

MOSES, C. J. William Kelly, on January 8, 1858, executed his last will and testament, and departed this life on the          day of          , 1860.

The plaintiffs are his surviving executors, John W. Kelly, a son of the testator, having died after qualifying. Elizabeth Kelly, his widow, died in March, 1861. The testator left children and grandchildren. The questions before the Court arise under the second and fifth clauses of the will, of which a copy is to be found in the brief. In January, 1862, (as is stated in the bill and admitted in the answer,) W. H. Kelly was elected to take the land devised by the said second clause at twelve thousand two hundred and ten dollars, the value at which it was appraised, and on the 21st of March of the same year, executed to his co-executors (the plaintiffs) three sealed notes, each for $4,070, payable in one, two and three years. He entered and held possession as of his own property until his death in 1864; his widow and children occupied it until 1866, when McJunkin, one of the plaintiffs, who also administered on the estate of the said John W. Kelly, rented out the premises with the consent of the widow. The notes are still unpaid.

Harriet S. Hodges has been in possession of the Newberry tract (devised by the fifth clause of the will) since the death of the testator, but has paid no part of the money for which she was to account.

No further statement of the matters set forth in the bill is necessary, because the motion only brings to the review of this Court the judgment of the Chancellor on the points made under the clauses referred to.

The doctrine that a vendor of land has an equitable lien for the payment of the consideration money has never prevailed in this State.—*McCorkle* vs. *Montgomery*, 11 Rich. Eq., 132; *Walker* vs. *Covar*, 2 S. C., 16. Even if the principle contended for had been adopted by our Courts, it could not be extended to a party who did not stand in the relation of a vendor having parted with his title for a consideration promised and still unpaid. It would be a contradiction in terms to apply it to any change of real estate, proceeding from gift and not from contract, for its very purpose is to secure the payment of the purchase money where such property has been sold without a mortgage or other security.

A will is arbitrary—the testator declares his own mind and purpose. A contract, on the contrary, is the result of an agreement with some other mind, and the intent and purpose of both the parties is to be ascertained.

When, however, a testator affixes as a condition of the devise, the payment of a sum of money, or the performance of any other act, without a compliance with which the benefit is not to be enjoyed, or when he subjects the devise to some stipulation, shewing a clear intent that it is not to vest absolutely, unless the prescribed requisition is fulfilled, the condition or stipulation so attaches to the devise, as not only to become part of it, but to operate as the controlling terms upon which its enjoyment is to take effect, or be retained.

All who claim under a will must be governed by it as a whole. If it confers a benefit which is subjected, either by express language or necessary implication, to diminution or abatement, it cannot be freed from the burthen by which it is fettered.

In *Glenn* vs. *Fisher*, 5 John. Ch., 35, Chancellor Kent says: "He who accepts a benefit under a will must conform to all its provisions, and renounce any right inconsistent with them. This is an obvious and settled principle in equity. He accepts of the devise under the condition of conforming to the will, and a Court of Equity will compel him to perform the condition ; for no man, says Chief Baron Eyre, (*Blake* vs. *Bunberry*, 1 Ves., Jr., 523,) shall be allowed to disappoint a will under which he takes a benefit."

Mr. Jarman, in his work on wills, vol. 1, p. 797, says: "No precise form of words is necessary in order to create conditions in wills ; any expression disclosing the intention will have that effect. Thus, 'a devise to A, he paying,' or he to pay '$500 within one month after my decease,' would be a condition for breach of which the heir might enter ; unless the property were given over in default by way of ex-

ecutory devise." Conditions are either precedent or subsequent; in other words, either the performance of them is made to *precede* the vesting of the estate, or the non-performance to *determine* an estate antecedently vested. So far as the interest of W. H. Kelly is concerned, it would now make no difference whether the condition is to be regarded as precedent or subsequent.

If the latter, a title to the land vested at the death of the widow of the testator. But the event on which it must continue is the payment of the assessed value at the expiration of the credit. On failure to perform the condition, he loses the right to retain.

In *Finley* vs. *Hunter*, 2 Strob. Eq., 212, Johnston, Ch., says: "Conditions precedent are such as are, from the nature of the case, or by express requirement, to be performed before the right to which they are annexed can attach or vest. Until they are performed, the right does not vest. Conditions subsequent are such as are to be performed after the right vests or attaches in law, and the general rule is, that the right which has already vested is terminated or divested by a failure to perform them."

The indefeasible right of W. H. Kelly did not depend on his mere entry on the land, or his execution of the notes, but did depend on the payment as the annual credits expired. In fact, the executors would have fully complied with their duty by allowing him to enter and hold after the appraisement of the value had been made and agreed to by him, even without requiring any evidence of his indebtedness. No sale of the plantation was to be made to him by the executors. He took, if he accepted of the conditions, directly under the will, and the payment of the money was one of them. To hold that he was to keep the land if he failed to pay the estimated value according to the directions of the will, would be in direct conflict with the intention of the testator, that he was "to have the right to it at the appraised value, if he choose to do so, at a credit of one, two and three years, in equal annual payments, without interest."

He cannot claim a benefit under the will without giving full effect to it, as far as he can. If the devise is affected with conditions, he must take it as it stands, or reject it.

Is there any thing in the will which even intimates an intention on the part of the testator that if the son failed, for want of disposition or ability, to pay the assessed value, the absolute title should still continue in him? Is it not clear that his design was to convert the land into money by the devise to the son, and if this purpose

could not be thereby accomplished, then through a sale by the executors?

If it had been the intention of the testator that the son should take the land as an unconditional devise, why was its value to be assessed, and a credit given for the payment? The will does not provide for any account of advances made to the children. On the contrary, the testator declares that by property advanced and embraced in it, he had made his children nearly equal, and his desire to continue that equality is expressed.

The scheme, too, of the will, seems to favor that intent. In the disposition of his slaves, including those bequeathed to his wife for life, the son, John W. Kelly, whose devise was not subject to any condition, was excluded. We may well assume that it was, because the devise to him and his children was not encumbered with any condition.

The argument on the part of the appellee is, that W. H. Kelly did not *decline* to take the land, and that, therefore, one of the events on which the alternative disposition depended, did not occur. The power, however, of the executors to sell, was not to be lost by his mere willingness to accept; it could only be extinguished by his acceptance and payment.

If no credit had been fixed by the will, the payment would have been a condition precedent to the vesting of the title; and is the enjoyment of the devise to be retained beyond the period at which the credit terminates, when the intent of the will is, that its continuance shall depend on the payment by the devisee of the appraised value?

It cannot be contended that the acceptance of the notes amounted to payment. The authorities in this State are to the effect, that a note taken does not amount to satisfaction, unless it is so agreed and understood by the parties; and unless such be the understanding, it is rather to be regarded as a memorandum or acknowledgment of the amount ascertained to be due.—*Barrelli, Torre & Co.,* vs. *Brown & Moses,* 1 McC., 449 ; *Costelo* vs. *Cave & Bradley,* 2 Hill, 528 ; *Kelsey* vs. *Holsted & Rosborough,* 2 Rich., 244; *Bank* vs. *Bobo,* 9 Rich., 318 ; *Hext* vs. *Fraser,* 2 Strob. Eq., 250.

The devise by the fifth clause to Mrs. Harriet S. Hodges, so far as it attaches terms and conditions on which the continuance of the proposed bounty was to depend, must be governed by the same construction we have given to the devise to the said W. H. Kelly, under the second clause.

It is ordered and adjudged, that so much of the decree of the Chancellor as declares that the plaintiffs have no lien on the plantation on which the testator resided at the time of his death, for the sum of $12,210, the amount at which it was appraised, and interest, and that they have no lien on the plantation devised to Harriet S. Hodges, for the payment of the three thousand dollars for which she was to account to the estate, be reversed.

It is also ordered, that the case be remanded to the Circuit Court for Union County, that such orders may be had as are necessary to carry out the judgment of this Court now pronounced, and to give full effect to so much of the Circuit decree as has not been made the subject of appeal.

*Willard*, A. J., *Wright*, A. J., concurred.